**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **TAVERN DOWNING, SR**, *et al.*,<br><br>    *Plaintiffs,*<br><br>**v.**<br><br>**JESSES THOMPSON,** *et al.*,<br><br>    *Defendants.* | **CIVIL ACTION NO.**<br>**5:23-cv-00501-TES** |

## ORDER DENYING PLAINTIFFS' MOTION TO AMEND
## AND GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are six motions. First, there are five motions to dismiss, all of which rest in part on sufficiency-of-process or service-of-process grounds. *See* [Doc. 45]; [Doc. 13][1]; [Doc. 49]; [Doc. 78]; [Doc. 84]. Second, after Defendants filed these motions, but before the Court could rule on them, Plaintiff Tavern Downing, Sr. moved for leave to file a Third Amended Complaint. [Doc. 87]. For reasons the Court will explain in further detail in Section 1 of this Order, the Court **DENIES** Plaintiff's Motion for Leave to Amend [Doc. 87] because his proposed amendment would be futile. Accordingly, for purposes of ruling on the pending motions to dismiss,

---

[1] Defendant Travis Griffin renewed his earlier filed Motion to Dismiss the First Amended Complaint [Doc. 13] in his "Response in Opposition" (i.e., Answer) to Plaintiff's Second Amended Complaint. *See* [Doc. 47, ¶ 3].

Plaintiffs' Second Amended Complaint ("SAC") remains the operative pleading.[2] [Doc. 43]. As explained in Section 2 of this Order, the Court **DISMISSES without prejudice** Plaintiffs' claims against all named Defendants for insufficient process and service of process. *See* Fed. R. Civ. P. 4(m).

<u>**BACKGROUND**</u>

On December 13, 2023, Plaintiff Downing filed this action pro se on behalf of himself and 16 other individuals listed as "Plaintiffs," alleging that the 22 various Defendants—government officers, government offices, and private entities alike— violated Downing's constitutional rights. [Doc. 1]. Only a few days after filing his Original Complaint [Doc. 1], Downing filed his First Amended Complaint ("FAC") as a matter of course. [Doc. 4]; *see* Fed. R. Civ. P. 15(a)(1). However, the Court identified several problems with the FAC. First, although Downing ostensibly filed the Original Complaint and FAC not only on behalf of himself but also on behalf of the 16 other "Plaintiffs," neither pleading contained the signatures of the other supposed Plaintiffs. *See* [Doc. 1, p. 1]; [Doc. 4, p. 1]. Thus, at that point, the Court considered Downing to be the sole Plaintiff in the action.[3] *See* [Doc. 39, p. 1 n.2].

The second problem with Downing's FAC was that although the FAC included

---

[2] Although it is unclear to the Court what possible claims the other listed Plaintiffs could have against Defendants, the Court will refer to them together as "Plaintiffs" for purposes of this Order and will specify "Plaintiff Downing" or "Plaintiff" when referring to Downing alone.

[3] The Court additionally struck several documents that the other listed Plaintiffs purportedly filed. *See* [Doc. 39, p. 1].

several counts listing constitutional violations in the form of legal conclusions and separately included what he called an "Incident Report" (essentially a factual background about events giving rise to his causes of action), it did not link specific claims to specific Defendants. *See* [Doc. 4, pp. 2–8]; [Doc. 39, p. 3]. However, instead of dismissing Downing's FAC, the Court gave him another opportunity to amend due to his pro se status. [Doc. 39, pp. 3–4].

On April 9, 2024, Plaintiffs jointly filed their SAC. Importantly, unlike the Original Complaint and FAC, the SAC included a signature page containing the signatures of 15 out of the 16 other purported Plaintiffs mentioned in the Original Complaint and FAC.[4] *See* [Doc. 43, p. 7]; [Doc. 1, p. 1]; [Doc. 4, p. 1]. Similar to the FAC, however, the SAC lists 15 counts with no factual allegations to go along with them and instead separately attaches as exhibits *several* "Incident Reports" detailing the factual allegations, as well as screenshots of email exchanges between Downing and some of the Defendants. *See* [Doc. 43, pp. 2–6]; *see, e.g.*, [Doc. 43-7]; [Doc. 43-2]; [Doc. 43-8]; [Doc. 43-9].

Since Plaintiffs filed their SAC, several groups of Defendants filed motions to dismiss it.[5] *See* [Doc. 45]; [Doc. 49]; [Doc. 78]; [Doc. 84]; *see* [Doc. 47, ¶ 3] *in connection*

---

[4] However, the signature page did not include a signature from purported Plaintiff Anthony Downing, so the Court terminated him as a party on April 9, 2024. *Compare* [Doc. 43, p. 7], *with* [Doc. 1, p. 1] *and* [Doc. 4, p. 1].

[5] Because of their pro se statuses, the Court notified Plaintiffs of each of the pending motions and their right to respond on two separate occasions. *See* [Doc. 63]; [Doc. 79].

*with* [Doc. 13] *and* [Doc. 15]. Each of these motions rest in part on grounds of insufficient process and/or service of process. Plaintiff Downing individually filed a Response to several of the motions.[6] *See* [Doc. 57] *in connection with* [Doc. 45] and [Doc. 49]. As the Court will explain below, Downing's Response (unsuccessfully) attempts to show that he properly served Defendants Griffin and the Bibb County Sheriff's Office. *See* [Doc. 57, pp. 2, 7]. Two other ostensible Plaintiffs—Henry Harris and William Graham—filed separate individual Responses to the pending motions, except the most recently filed one by Robert Collins, Mark Daniel, Anita Howard, Tony May, Paige Miller, and Mike Smith. *See* [Doc. 81]; [Doc. 82] *in connection with* [Doc. 13] *and* [Doc. 45] *and* [Doc. 49] *and* [Doc. 78]. However, neither Graham nor Harris addressed the service-of-process issue at all in their responses. *See* [Doc. 81]; [Doc. 82].

Moreover, after noticing that several other named Defendants (the Drug Enforcement Administration, the United States Postal Service, the District Attorney's Office, or Officer Jarret Arrington) had not participated in the case at all, the Court observed that those Defendants likewise had not been timely and properly served or served at all. [Doc. 83, pp. 1–2]. Accordingly, on July 10, 2024, the Court ordered

---

[6] The docket says that the Response is for the BCSO Defendants' Motion [Doc. 45] and the Media Defendants' Motion [Doc. 49]. *See* [Doc. 57]. However, the substance of Downing's Response refers only to the BCSO Defendants and Griffin, and his attachments only show a service attempt (of his Amended Complaint only) on the Sheriff's Office, the District Attorney's Office, and Travis Griffin. *See* [Doc. 57, pp. 2–5]; [Doc. 57-2, pp. 1–3]; [Doc. 57-3, p. 1].

Plaintiffs to show cause as to why their claims against these Defendants should not be dismissed for failure to comply with Federal Rule of Civil Procedure 4 and its 90-day service deadline. [Doc. 83]; *see* Fed. R. Civ. P. 4(c), (e), & (m). The Court gave Plaintiffs until August 2, 2024, to show cause. [Doc. 83, p. 3]. Plaintiff Downing individually responded on July 29, 2024, arguing that he had good cause for his delay in serving the Defendants because he relied on the faulty advice of his first process server, and upon learning of the error, he "hired" a second process server to make another attempt in June 2024.[7] *See* [Doc. 86, p. 2]. Upon reviewing the actual Proof of Service document in the record, however, the Court noticed that the process server was Casmine O'Bryant—one of the additional purported Plaintiffs in this action.[8] *See* [Doc. 74, p. 1]; [Doc. 1, p. 1].

The same day Plaintiff Downing filed his Show Cause Response, he also individually filed a Motion for Leave to Amend, with an attached Proposed Third Amended Complaint ("Proposed TAC").[9] [Doc. 87]; [Doc. 87-1]. Although the

---

[7] As the Court will explain below, even this June attempt was improper under Rule 4. Nevertheless, because Plaintiff Downing's Response to the Court's Show Cause Order attempts to explain why his service attempts were improper and late, the Court will consider the arguments in his Show Cause Response when analyzing each of the Defendants' motions to dismiss. *See* [Doc. 86, p. 2].

[8] It appears that the Plaintiff listed in Plaintiff's Original Complaint and SAC as "Casmine O'Bryant" is the same person who signed Plaintiff's SAC as "Casmine Burgess." *See* [Doc. 1, p. 1 (Plaintiff's Original Complaint listing "Casmine O'Bryant" as a Plaintiff)]; [Doc. 43, pp. 3, 7 (Plaintiff's SAC listing "Casmine O'Bryant" as a Plaintiff with a claim under Count V but containing the signature of a "Casmine Burgess" on his page containing the signatures of all Plaintiffs)].

[9] Although Plaintiff Downing phrases the Motion to Amend as if on behalf of all "Plaintiffs," he was the only one to sign the Motion. *See* [Doc. 87, pp. 1, 3].

Proposed TAC was ostensibly filed on behalf of all Plaintiffs, it—like the Original

Complaint and FAC—contains only Downing's signature. *See* [Doc. 87, pp. 1, 3].

## DISCUSSION

### 1. Plaintiff's Motion to Amend

If the Court were to grant Plaintiff's Motion for Leave to Amend, Defendants'

motions to dismiss his SAC would be moot, and Defendants would need to file new

motions to dismiss, thus restarting the motion-to-dismiss process. *See Dresdner Bank*

*AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (explaining that when

"the original pleading is abandoned by [an] amendment," the original pleading

becomes a legal nullity, and the amended pleading supersedes it). Accordingly,

before the Court can address the pending motions to dismiss Plaintiffs' SAC, the

Court must first decide whether to grant or deny Downing's Motion to Amend. For

the following reasons, the Court **DENIES** Plaintiff Downing's Motion to Amend

[Doc. 87].

### A. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) directs the Court to "freely give leave

[to amend] when justice so requires." Yet, despite this instruction, leave to amend is

"by no means automatic." *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th

Cir. 1979). The trial court has "extensive discretion" in deciding whether to grant

leave to amend. *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999). A trial

court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays, or is futile." *Id.*; *see Joannou v. Watkins*, No. 5:20-CV-00213-TES, 2020 WL 5079162, at *1 (M.D. Ga. Aug. 27, 2020) ("Plaintiff has already amended his Complaint once and now seeks to do so again, adding additional federal claims *to attempt to avoid dismissal*.") (emphasis added).

A claim is futile if it cannot withstand a motion to dismiss. *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (explaining that futility is another way of saying "inadequacy as a matter of law"). That is, leave to amend will be denied "if a proposed amendment . . . fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

B.  <u>Analysis</u>

Plaintiff's Motion to Amend seeks to add a new defendant, Vanessa Flournoy, who Plaintiff claims was "significantly involved in planning and perpetrating" the alleged violations of his constitutional rights. [Doc. 87, p. 1]. Similarly to the prior versions of the Complaint, Downing's Proposed TAC lists 12 counts of constitutional violations with no facts—just legal conclusions—under each count. [Doc. 87-1, pp. 2–6]. The Proposed TAC also contains a singular, separate "Incident Report Background" detailing some of the facts giving rise to his causes of action—like the multiple "Incident Reports" attached to his SAC. *See* [Doc. 87-1, pp. 2–8].

First, although Plaintiff names the would-be new defendant Flournoy under Count VIII ("conspiracy and aiding and abetting to unlawfully steal over 600 bitcoins"), Count VIII contains zero factual allegations about anything any Defendant or would-be defendant did. *See* [Doc. 87-1, p. 4]. Moreover, Plaintiff's "Incident Report Background" contains zero mention of Flournoy. *See* [*id*. at pp. 7–8]. Although Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,'" it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The only mention of Flournoy in Plaintiff's Proposed TAC—under Count VIII—is the epitome of "an unadorned, the-defendant-unlawfully-harmed-me accusation." *See Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's Proposed TAC fails to state a claim against Flournoy, and thus, his attempt to add her would be futile. *See Mizzaro*, 544 F.3d at 1255.

Second, in light of Downing's Response to the Court's Show Cause Order, it seems to the Court that Downing believes that amending his Complaint to add Flournoy will restart his 90-day clock for serving process on all the other Defendants too. *See* [Doc. 86, p. 2 (arguing that "by adding new defendants to the complaint[,] the 90-day service date restarted")]. However, Plaintiff is incorrect.

Plaintiff filed his Original Complaint on December 14, 2023. [Doc. 1]. Under Federal Rule of Civil Procedure 4(m), Plaintiff had 90 days from the date he filed suit

to serve process on all of the Defendants named in the Original Complaint. Plaintiff's Original Complaint named the same Defendants as the FAC and SAC, so his deadline to serve them remained 90 days from December 14, 2023—or March 13, 2024. [Doc. 1, p. 1]; Fed. R. Civ. P. 4(m). As the Court will explain in the next section, Plaintiff failed to do so.

To be sure, Plaintiff is correct that filing an amended complaint can restart the 90-day clock if the amended complaint names a new defendant—but only as to the newly named defendant, not the defendants who have been there all along. *See Castillo v. Vance*, No. 20-81139-CIV, 2020 WL 13379380, at *2 n.1 (S.D. Fla. Oct. 5, 2020); *Lindley v. City of Birmingham*, 452 F. App'x 878, 880 (11th Cir. 2011). Amending his Complaint would not help Plaintiff correct the fact that he has not properly served the Defendants named in the Original Complaint—which, as the Court will explain in the next Section, he has not done. *See infra* Section 2. In other words, his proposed amendment would be wholly futile to save the SAC from its service shortcomings.

One final problem with the idea of granting Downing's Motion to Amend is that if the Court were to do so, the Court would also have to terminate the additional Plaintiffs from the action. *See* [Doc. 39, p. 1 n.2]. However, to do so would be akin to allowing one Plaintiff (Downing) to effectively dismiss the claims of the other Plaintiffs. As a pro se litigant and not an attorney, the Court isn't so sure he could do that. To avoid the conclusion that Plaintiff's is engaged in the unauthorized practice

of law, the Court declines to allow him to amend his Complaint to effectively drop the other Plaintiffs' claims. Accordingly, for all of the foregoing reasons, the Court **DENIES** Downing's Motion to Amend [Doc. 87]. The SAC remains the operative complaint.

### 2. Pending Motions to Dismiss

Now, having denied Plaintiff's Motion to Amend, the Court can move onto ruling on the Defendants' various motions to dismiss and Plaintiff Downing's Response to the Court's Show Cause Order as to the remaining non-movant Defendants. As the Court will explain in further detail below, the Court **GRANTS** each of the motions and **DISMISSES** Plaintiffs' claims against the movant Defendants **without prejudice**. [Doc. 45]; [Doc. 13]; [Doc. 49]; [Doc. 78]; [Doc. 84]. Additionally, as Plaintiffs failed to show that they adequately served process on the remaining Defendants or good cause for their delay, the Court **DISMISSES without prejudice** the claims against the remaining Defendants as well.[10] *See* [Doc. 83]; [Doc. 86].

### A. Legal Standard

To effect service of process, a plaintiff must—within 90 days of filing suit—

---

[10] After further investigation into his claims against the Drug Enforcement Administration ("DEA"), Plaintiff has agreed to dismiss his claims against it. *See* [Doc. 86, p. 2]. The Court dismisses the claims against the other remaining Defendants—the United States Postal Service ("USPS"), the District Attorney's Office ("DA's Office"), and Officer Arrington—for insufficient service of process. *See infra* Section 2.B.v.

serve a copy of the summons *and* complaint on each defendant in a manner consistent with the requirements of Federal Rule of Civil Procedure 4. *See* Fed. R. Civ. P. 4(a), (c), (e), & (m); *T-12 Ent., LLC v. Young Kings Enterprises, Inc.*, 36 F. Supp. 3d 1380, 1391 (N.D. Ga. 2014). If there is a problem with the process or the service of it, a defendant may move to dismiss the action under Federal Rules 12(b)(4) or 12(b)(5).

These two mechanisms are related but distinct. A motion under Rule 12(b)(4) concerns the form of the process (the summons itself and the accompanying complaint). *Hunter-Riley v. Pro. Collision*, No. CV 1:20-00100-TFM-N, 2021 WL 800848, at *1 (S.D. Ala. Feb. 5, 2021), *report and recommendation adopted*, No. 1:20-CV-100-TFM-N, 2021 WL 798861 (S.D. Ala. Mar. 1, 2021) (citing 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed.)). For example, when a defendant is arguing that the summons is not properly filled out, doesn't contain the right information, or is otherwise defective in its content, a Rule 12(b)(4) motion is the proper mechanism to challenge it. *Id*. A Rule 12(b)(5) motion, on the other hand, is the vehicle through which a defendant can challenge the method of delivery of process. *Id*. Put simply, even if the content of the process is all correct, the plaintiff must still serve it on each defendant in a manner compliant with Rule 4.[11] *Id*.

Service of process is a threshold jurisdictional requirement—meaning that

---

[11] "A defendant's actual notice [of the suit] is not sufficient to cure defectively executed service." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (per curiam).

"where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022). In other words, "where service of process is insufficient, it is 'improper for the district court to . . . reach[] the merits'" of a case. *Glover v. City of Abbeville*, No. 5:19-CV-277-MTT, 2020 WL 1876253, at *3 (M.D. Ga. Apr. 15, 2020) (quoting *Jackson v. Johns*, 259 F. App'x 181, 182–83 (11th Cir. 2007)).

Although a defendant first bears the burden of specifying the particular ways that the plaintiff failed to satisfy the procedural requirements of Rule 4, once the defendant does so, the plaintiff ultimately bears the burden of proving valid and adequate service of process. *Glover*, 2020 WL 1876253, at *3; *see T-12 Ent.*, 36 F. Supp. 3d at 1391–92; *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1297 (N.D. Ga. Aug. 18, 2009) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990)). As it pertains here, a plaintiff's pro se status does not lessen this burden. Pro se plaintiffs must comply with the Federal Rules of Civil Procedure just the same as any other litigant. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989); *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (per curiam) ("Despite construction leniency afforded pro se litigants, we nevertheless have required them to conform to procedural rules.").

That said, if a plaintiff cannot prove adequate and timely service of process, the Court must extend time for service if the plaintiff can make a showing of "good cause for the failure." Fed. R. Civ. P. 4(m). "Good cause exists only when some outside factor such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (internal quotations omitted). Nonetheless, "Rule 4(m) grants discretion to [a] district court to extend the time for service of process even in the absence of a showing of good cause." *Horenkamp v. Van Winkle and Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

B.  <u>Analysis</u>

i.    *BCSO Defendants*

First up is a Motion to Dismiss pursuant to Rule 12(b)(5) filed by Defendants Jesse Thomson,[12] Paul McDuffie, Joel Presley, Deborah Statham,[13] Reginald Nelson, Jim MacDonald, Jeffery Woodard, and the Bibb County Sheriff's Office (collectively, the "BCSO Defendants"). [Doc. 45].[14] Specifically, the BCSO Defendants contend that

---

[12] Plaintiffs spelled Jesse Thomson's name "Jesses Thompson," and therefore, it was entered on the Court's docket with the incorrect spelling. *See* [Doc. 1, p. 1]; [Doc. 43, p. 1]. Nevertheless, Thomson believes himself to be the intended Defendant and proceeds as such. [Doc. 44, p. 1 n.2].

[13] Likewise, Plaintiffs spelled Deborah Statham's name "Stratham." *See, e.g.*, [Doc. 1, p. 4]; [Doc. 43, p. 4]. Nevertheless, Statham believes herself to be the intended Defendant and proceeds as such. [Doc. 44, p. 1 n.3].

[14] The BCSO Defendants filed their Motion to Dismiss at Document 45 on the docket but filed their Memorandum in Support of their Motion at Document 46. *See* [Doc. 45]; [Doc. 46]. The Court will cite to

although Plaintiff Downing filed a "Certificate of Service," an affidavit showing he

served his Amended Complaint on the Bibb County Sheriff's Office on February 1,

2024, the Certificate contains no indication that the individual BCSO Defendants—

Statham, Woodard, Presley, Nelson, Thomson, McDuffie, or MacDonald—were

served with anything on that date. *See* [Doc. 20, p. 6]; *see generally* [Doc. 20].

As the BCSO Defendants point out, Rule 4 clearly requires that a plaintiff serve

a copy of the summons and complaint and must provide proof of service to the Court

by way of an affidavit. *See* Fed. R. Civ. P. 4(c) & (l). In Response to the Motion to

Dismiss, Plaintiff Downing contends (1) that he emailed a demand letter to and

properly served Defendant Travis Griffin and (2) that he properly served the Bibb

County Sheriff's Office. *See* [Doc. 57, p. 2]; [Doc. 57-3, p. 1]; [Doc. 57-2, pp. 1–2].

However, before we move onto the issues with service, it should be noted that

Georgia sheriffs' departments are not proper parties to a suit like this because they

are not legal entities capable of being sued. *Myers v. Chatham Cnty. Sheriff's Office*,

CV421-239, 2024 WL 3432026, at *2 (S.D. Ga. July 16, 2024); *see, e.g., Wooten v.

Bohannon*, 2021 WL 5751440, at *2 (S.D. Ga. Nov. 10, 2021) (citing *Hale v. Tallapoosa

Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)) (recommending dismissal of claims against

county sheriff's department because department was "not a 'person' subject to suit

the Motion at Document 45, but when referencing the arguments the BCSO Defendants make in support
of their Motion, the Court will cite to specific pages in Document 46.

under § 1983"), *adopted* 2021 WL 5746004 (S.D. Ga. Dec. 2, 2021). Accordingly, on that ground alone, Plaintiffs' claims against the Bibb County Sheriff's Office could not survive. However, even assuming Plaintiffs could sustain a claim against the Sheriff's Office, Downing's multiple attempts to serve the Sheriff's Office are improper.

Although Downing's Certificate of Service shows that Plaintiff literally had his Amended Complaint served at the physical location of the Sheriff's Office, Plaintiff offers nothing in his exhibit or anywhere else in the record that, at that time, any Plaintiff served the *summons* on the Sheriff's Office in accordance with Rule 4, which requires service of the summons *and* complaint on each defendant. *See* [Doc. 46, p. 10 n.12]; [Doc. 20, p. 6 (showing only that Plaintiff served his "Amended Complaint" on the Sheriff's Office on February 1, 2024)]; Fed. R. Civ. P. 4(c)(1); *see also* [Doc. 44, p. 4 (preserving all of the BCSO Defendants' insufficient process defenses)]. Hence, Plaintiff Downing's service attempt upon the Sheriff's Office on February 1, 2024, was improper under Rule 4(a) and (c)(1).

Moreover, the Certificate does not show that Downing even attempted to serve any BSCO Defendant other than the Sheriff's Office back in February 2024. *See generally* [Doc. 20]. To be sure, Downing's Response to the Court's Show Cause Order points to the fact that he made another service attempt on multiple Defendants, including the BCSO Defendants, in June 2024. *See* [Doc. 86, p. 2]. But several problems remain. *See* [Doc. 66-3]; [Doc. 66-2]; [Doc. 66-11]; [Doc. 66-19]; [Doc. 66-15]; [Doc. 66-

12]; [Doc. 66-14]; [Doc. 66-20].

First, the deadline to serve these Defendants was March 13, 2024.[15] *See* [Doc. 1]; Fed. R. Civ. P. 4(m). In other words, these service attempts on June 10, 2024, are woefully late. Second, there is no indication in the record that service has *ever*, to date, been perfected on Defendants Statham, Woodard, Presley, Nelson, Thomson, or McDuffie. *See* [Doc. 74]. Third, as to Defendants MacDonald and the Sheriff's Office, the docket reflects that summons was "returned executed" on June 21 and 24, 2024— but a closer look reveals that these service attempts were also improper. *See* [Doc. 71]; [Doc. 74].

Although Downing contends in his Show Cause Response that his newly "hired" process server has now properly served Defendants, his Proof of Service affidavits as to MacDonald [Doc. 74] and the Sheriff's Office [Doc. 71] show that the process server was Casmine O'Bryant—one of the Plaintiffs in this action. *See* [Doc. 74, p. 1]; [Doc. 1, p. 1]. As a Plaintiff, O'Bryant cannot serve as a valid process server in this action under Rule 4(c)(2). *See* Fed. R. Civ. P. 4(c)(2) (explaining that service

---

[15] As explained above, although Plaintiff later filed two amended complaints, "[f]iling an amended complaint does not restart the 90-day Rule 4(m) period unless the amended complaint names a new defendant." *Castillo v. Vance*, No. 20-81139-CIV, 2020 WL 13379380, at *2 n.1 (S.D. Fla. Oct. 5, 2020) (citing *Lindley v. City of Birmingham*, 452 F. App'x 878, 880 (11th Cir. 2011)). Plaintiff's Original Complaint named all of the Defendants named in his FAC and SAC, so his deadline to serve them all was March 13, 2024. [Doc. 1, p. 1]; Fed. R. Civ. P. 4(m). Amended complaints only start the 90-day deadline over as to newly added defendants who were not already in the suit. *See Castillo*, 2020 WL 13379380, at *2. Otherwise, a plaintiff could amend his complaint every 90 days and effectively buy himself a new 90-day timeframe whenever it suited him.

may be made by "[a]ny person who is at least 18 years old *and not a party*") (emphasis

added). Therefore, Plaintiff's untimely service attempt in June was still improper.

Plaintiff may be right that a plaintiff can show good cause if he properly serves the

defendants within a month after the service deadline and/or within a few weeks of

learning his prior service attempt was improper. *See, e.g., Holmes v. Silver Line Bldg.*

*Prod. LLC*, No. 119-CV-04849-WMR-LTW, 2021 WL 7708316, at *2 (N.D. Ga. Oct. 5,

2021); *Peddie v. InComm*, No. 1:17-CV-4405-WSD-JSA, 2018 WL 3061927, at *6 (N.D.

Ga. Mar. 22, 2018), *report and recommendation adopted*, No. 1:17-CV-4405-WSD-JSA,

2018 WL 2252999 (N.D. Ga. May 17, 2018). However, Plaintiff's improper attempt

three months after the service deadline—and nearly two months after the first Motion

to Dismiss raising the issue of service of process was filed—will not suffice. *See* [Doc.

66]; [Doc. 45].

    After reviewing the record, including Plaintiff's attached Certificate, the Court

can find no evidence that Defendants Statham, Woodard, Presley, Nelson, Thomson, or

McDuffie have ever been served. *See* [Doc. 66]. Defendant MacDonald was served way

too late and improperly at that. *See* [Doc. 66]; [Doc. 74]. And although Plaintiff

attempted to timely serve the Sheriff's Office, he only served the Sheriff's Office with his

Amended Complaint, not the summons, and his later attempt on June 10 was likewise

improper and too late. *See* [Doc. 71]. The BCSO Defendants have met their burden in

challenging process and service of process, and Plaintiffs have failed to produce

evidence rebutting the challenge or showing good cause for the delay. *See T-12 Ent.*, 36 F. Supp. 3d at 1391–92; Fed. R. Civ. P. 4(m); [Doc. 57, pp. 2–5]; [Doc. 81, p. 2]; [Doc. 82, p. 2]. Accordingly, the Court **GRANTS** the BCSO Defendants' Motion to Dismiss [Doc. 45] for insufficient process and service of process and **DISMISSES** them from this action **without prejudice**.

> ii.    *Media Defendants*

Likewise, Defendants Pacific and Southern LLC d/b/a 13 WMAZ-TV, Morris Network, Inc. d/b/a WMGTTV, and Sinclair Communications, LLC d/b/a 24 WGXA (collectively, the "Media Defendants") move to dismiss on several grounds.[16] [Doc. 49]. One of those grounds is insufficient service of process. *See* [Doc. 49-1, pp. 5–7]. Similar to the Sheriff's Office, Plaintiff's Certificate of Service shows that he served his Amended Complaint on two of the Media Defendants, Pacific and Southern[17] and Morris Network,[18] on February 7 and February 28, 2024, respectively.[19] *See* [Doc. 20,

---

[16] The Media Defendants note that Plaintiff incorrectly names "13 WMAZ News," "41 NBC News," and "24 WGXA News" as Defendants in this action. [Doc. 49, p. 1 n.1]. According to the Media Defendants, however, those are not legal entities. [*Id.*]. The Media Defendants proceed under the assumption that the correct entities are (1) Pacific and Southern, LLC d/b/a 13 WMAZ-TV; (2) Morris Network, Inc. d/b/a WMGT-TV; and (3) Sinclair Communications, LLC d/b/a 24 WGXA. [*Id.*].

[17] Plaintiff refers to this Defendant as "13 WMAZ News."

[18] Plaintiff refers to this Defendant as "41 NBC News."

[19] Although Plaintiff Downing filed his Response as if in response to both the BCSO Defendants' Motion and the Media Defendants' Motion and the Response contains copies of his Certificate of Service, the pages of the Certificate of Service that he attached in his Response do not contain copies of the pages showing any kind of service attempt on the Media Defendants. *See* [Doc. 57-2]; [Doc. 57-3]. Moreover, the text of his Response does not mention the Media Defendants. *See* [Doc. 57, pp. 2–5]. Nevertheless, for

pp. 3–4]. As with the Sheriff's Office, however, there is no evidence that Plaintiff served the summons on these two Media Defendants in February. *See* [*id*.].

Further, there is no evidence in the record that Plaintiff ever attempted to serve anything on the third Media Defendant, Sinclair Communications,[20] until June 10, 2024. *See generally* [Doc. 20]; *see* [Doc. 66-1]. Like with most of the individual BCSO Defendants, the record reflects that Plaintiff attempted to serve Sinclair Communications for the first time on June 10, 2024. *See* [Doc. 66-1]. But again, there are two problems. For one, there is no evidence that service was ever perfected. Second, even if it was, it's also way too late. *See* [Doc. 1]; Fed. R. Civ. P. 4(m).

Plaintiff made two more attempts to serve one of the Media Defendants, Morris Network,[21] on June 10, 2024 and June 25, 2024—but this too is far too late. *See* [Doc. 72, p. 1]; [Doc. 66-4]. As with the BCSO Defendants, the deadline to serve these Defendants was March 13, 2024. *See* [Doc. 1]; Fed. R. Civ. P. 4(m). Despite Plaintiff's contention that he properly served Defendants quickly upon learning of the error, there is no evidence that Plaintiffs have ever perfected service on any of these Defendants. *See* [Doc. 86, p. 2]. A plaintiff simply saying he served a defendant does not suffice; the plaintiff must actually prove it. *See* Fed. R. Civ. P. 4(i). And here, no

---

purposes of this analysis, the Court will look to the previously filed Certificate of Service for evidence that Plaintiff served or attempted to serve the Media Defendants. *See generally* [Doc. 20].

[20] Plaintiff refers to this Defendant as "24 WGXA."

[21] Plaintiff refers to this Defendant as "41 NBC News."

plaintiff has done so.

Accordingly, the Media Defendants have met their burden of showing Plaintiff failed to comply with Rule 4. *See* Fed. R. Civ. P. 4(a)(1) & (c)(1). No Plaintiff has sufficiently refuted the challenge or made a showing of good cause for the ongoing delay. *See* [Doc. 57, pp. 2–5]; [Doc. 81, p. 2]; [Doc. 82, p. 2]. Plaintiffs' claims against the Media Defendants are **DISMISSED without prejudice** pursuant to Rule 12(b)(5).

       *iii.*    *Travis Griffin*

Next, after Plaintiff filed his SAC, Defendant Travis Griffin renewed his Motion to Dismiss Plaintiff's FAC [Doc. 13] and accompanying brief [Doc. 15]. *See* [Doc. 47, ¶ 3]. As with the other separately moving Defendants, one of Griffin's grounds is insufficient service of process. [Doc. 13, ¶ 3]. The responses from Plaintiffs Harris and Graham do not address this issue. *See* [Doc. 81, p. 2]; [Doc. 82, p. 2].

Here too, Plaintiff's Certificate of Service, which he also attached to his Response to the motions to dismiss, shows that he attempted to serve his Amended Complaint on Griffin on February 7, 2024. *See* [Doc. 20, p. 5]; [Doc. 57, p. 2]; [Doc. 57-3, p. 1]. But again, there is no indication in that document or anywhere else in the record that Plaintiff actually served the summons on Griffin along with the Amended Complaint on that February date. *See* [*id*.]. The record also reflects that the Clerk of Court issued summons as to Griffin on June 10, 2024. [Doc. 66-10]. But again, this attempt is too late, and there is no evidence the attempt was ever perfected. *See* [Doc.

1]; Fed. R. Civ. P. 4(m). Accordingly, Griffin has met his burden of showing insufficient service of process, and none of the purported Plaintiffs has refuted the challenge or made a showing of good cause. *See* [Doc. 57, pp. 2–5]; [Doc. 81, p. 2]; [Doc. 82, p. 2]. The Court **DISMISSES without prejudice** Plaintiffs' claims against Griffin pursuant to Rule 12(b)(5).

iv.    *DA Defendants*

Next up, Defendants District Attorney Anita Howard and current or former Assistant District Attorneys Tony May, Robert Collins, Paige Miller, Mike Smith, and Mark Daniel (collectively, "DA Defendants") move to dismiss. [Doc. 78]. It should be no surprise that one of their grounds is likewise insufficient and untimely service of process. *See* [Doc. 78-1, pp. 2-3]. Again, ostensible Plaintiffs Harris and Graham do not address this issue in their Responses. *See* [Doc. 81, p. 2]; [Doc. 82, p. 2].

The record reflects that summons was not issued on these Defendants until June 10, 2024—three months past the March 13, 2024, deadline. *See* [Doc. 66-16]; [Doc. 66-9]; [Doc. 66-13]; [Doc. 66-7]; [Doc. 66-6]; *see* [Doc. 1] *in connection with* Fed. R. Civ. P. 4(m). Summons was returned unexecuted as to Defendant May on June 10, 2024, and there is no evidence that summons was ever returned—executed or unexecuted—as to any of the other DA Defendants.[22] *See* [Doc. 75]. As Downing's

---

[22] Moreover, even if Plaintiff had been able to serve May, it would have been improper because, again, the process server was O'Bryant, a party to this action and thus, an improper process server. *See* Fed. R. Civ. P. 4(c)(1).

Show Cause Response does not convince the Court that Plaintiffs have good cause for their ongoing delay, the Court **GRANTS** the DA Defendants' Motion to Dismiss [Doc. 78] and **DISMISSES** Plaintiffs' claims against them **without prejudice** pursuant to Federal Rule of Civil Procedure 12(b)(5). *See* [Doc. 86, p. 2].

     *v.*  *Marcus Baker*

   Last of the movants is Defendant Marcus Baker, who, like the others, moves to dismiss on several grounds, including insufficient service of process.[23] [Doc. 84-1, p. 3]. There are two problems with Plaintiff's service attempts on Baker. First, as Baker points out, the record shows he was served too late. *See* [Doc. 66]; [Doc. 73]. Although it appears that summons was returned executed as to Baker, that did not occur until June 24, 2024—over six months after Plaintiff filed suit. *See* [Doc. 73]. Second, as with BSCO Defendants MacDonald and the Sheriff's Office, a closer look at Plaintiff's Proof of Service from this June 24 attempt reveals that service was improper. Plaintiff's Proof of Service shows that the process server was Casmine O'Bryant—a party to this action and therefore not a proper person to serve process. *See* [Doc. 73]; Fed. R. Civ. P. 4(c)(2). In other words, he has yet to be properly served.

   Again, as with the BCSO Defendants, Plaintiff may be right that a plaintiff can

---

[23] Baker states that "service of process was insufficient under Federal Rule of Civil Procedure 12(b)(4)." [Doc. 84-1, p. 3]. However, Rule 12(b)(4) is for insufficient *process*, not service of process. *See* Fed. R. Civ. P. 12(b)(4). The correct mechanism is Rule 12(b)(5), insufficient *service* of process. *See* Fed. R. Civ. P. 12(b)(5). Nevertheless, the Court will construe the motion as one under Rule 12(b)(5).

show good cause if he properly serves the defendants within a month after the

service deadline or within a few weeks of learning his prior service attempt was

improper. *See, e.g., Holmes*, 2021 WL 7708316, at *2; *Peddie*, 2018 WL 3061927, at *6.

But, Plaintiff's improper service attempt three months after the deadline will not

suffice. *See* [Doc. 66]. Accordingly, as Plaintiffs have failed to establish timely and

proper service or make a showing of good cause, the Court **GRANTS** Defendant

Baker's Motion to Dismiss [Doc. 84] and **DISMISSES** all Plaintiffs' claims against

him pursuant to Federal Rule of Civil Procedure 12(b)(5). *See* Fed. R. Civ. P. 4(m).

> vi.    *Remaining Defendants*

Now, having granted the pending motions to dismiss, only a few Defendants

remain in this case: the Drug Enforcement Administration ("DEA"), the United States

Postal Service ("USPS"), the District Attorney's Office ("DA's Office"), and Officer

Jarret Arrington. On July 10, 2024, the Court—seeing that none of these Defendants

had participated in the case thus far—grew concerned that Plaintiff had not properly

effected service on them. Accordingly, the Court issued an Order to Show Cause,

explaining, first, that although Plaintiff's Certificate of Service indicated that he timely

served his FAC on the USPS and the DA's Office, the Certificate did not show that he

served the summons on them in accordance with Federal Rule of Civil Procedure 4(a)

and (c). [Doc. 83, pp. 1–2 (citing [Doc. 20, pp. 1, 7])]. Second, the Court's Order

explained that although the record indicated that the Clerk of Court issued summons

on June 10, 2024, as to Arrington and the USPS, nothing in the record indicated that service was ever perfected on them. [*Id*. (citing [Doc. 66-10]; and then citing [Doc. 66-18])]. Third and finally, as the Court explained, the record also indicated that service was not perfected on the DA's Office after a second attempt in June 2024, nor was it ever even *attempted* on the DEA. [*Id*. (citing [Doc. 76])].

The Court's Order explained the requirements of Rule 4(m) in detail and then ordered Plaintiff to show cause by Friday, August 2, 2024, why his claims against these Defendants should not be dismissed for failure to comply with the Federal Rules of Civil Procedure. [*Id*. at pp. 2–3]. The Court warned that "[f]ailure to fully and timely comply with this Order [would] result in the immediate dismissal of Plaintiff's claims against the above-named Defendants." [*Id*. at p. 3]. As explained above, Plaintiff responded, and after careful review of Plaintiff's arguments, the Court finds them insufficient.

But first—some housekeeping. In his Response to the Show Cause Order, Plaintiff states that upon further research, he has learned that he does not have a valid claim against the DEA and agrees to dismiss any claims against it. [Doc. 86, p. 2]. Accordingly, the Court **DISMISSES** Plaintiffs' claims against the DEA and **TERMINATES** it as a party to this action. Now, onto the rest of the remaining Defendants: the DA's Office, the USPS, and Officer Arrington.

In his Show Cause Response, Downing argues that his first process server gave

him "faulty advice" and that he hired a new process server in June upon learning of the defects in his prior service attempts. [*Id*.]. And although the second process server attempted to serve the DA's Office, the USPS, and Arrington in June 2024, Plaintiff explains that the postmaster and a DA's Office employee refused service. [*Id*.]. Thus, Plaintiff contends that he has shown good cause, and the Court should grant him a retroactive extension to serve process such that his June attempts are timely. [*Id*.].

However, first, Plaintiff never explains what the first process server's faulty legal advice was or how it led him to completely disregard the requirements of Rule 4, so this accusation is nothing more than a legal conclusion. *See* [*id*.]. Second, even assuming the DA's Office employee and the postmaster refused service improperly (they didn't), there are several problems with Plaintiff's attempt. First, as with Defendants Griffin, MacDonald, and the Sheriff's Office, it appears the process server for Plaintiff's second attempt to serve the USPS and the DA's Office in June was Casmine O'Bryant. *See* [*id*.]. Again, as O'Bryant is a party to this action, she is not a proper process server, and thus, Plaintiff's June 2024 service attempt was not only months too late—but *still* improper. *See* Fed. R. Civ. P. 4(c)(2). Thus, the delay is ongoing, and Plaintiffs have yet to rectify the situation. *See, e.g.*, *Holmes*, 2021 WL 7708316, at *2; *Peddie*, 2018 WL 3061927, at *6.

Moreover, to serve the USPS, Plaintiff would have needed to fulfill the additional requirements for serving an agency of the United States, including serving

the United States:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i)(1). There is no evidence in the record that Plaintiffs have complied with these additional requirements.

Plaintiffs' claims against the DA's Office face the same problem as the claims against the Sheriff's Office. The DA's Office, like the Sheriff's Office, is not subject to suit as an entity. *Smith v. Glynn Cnty. Det. Ctr.*, No. 2:20-CV-119, 2021 WL 627034, at *2 (S.D. Ga. Jan. 22, 2021), *report and recommendation adopted*, 2021 WL 623770 (S.D. Ga. Feb. 17, 2021) ("While local governments qualify as 'persons' under § 1983, state agencies, penal institutions, and private corporations which contract with states to operate penal institutions are generally not considered legal entities subject to suit."); *see Peppers v. Cobb Cnty.*, No. 1:13-CV-1340-ELR-JFK, 2014 WL 12633501, at *5 (N.D. Ga. Dec. 5, 2014), *report and recommendation adopted*, No. 1:13-CV-1340-ELR, 2015 WL

12867000 (N.D. Ga. Jan. 29, 2015), aff'd, 835 F.3d 1289 (11th Cir. 2016) (holding that a county does not control a district attorney's office); *see also Garrett v. Talladega Cnty. Drug & Violent Crime Task Force*, 983 F. Supp. 2d 1369, 1378 (N.D. Ala. 2013) (holding that under Alabama law, district attorney's offices are agencies of the state).

As to Officer Arrington, although Downing argues that "[t]he process server attempted to serve USPS and Jarret Arrington and the postmaster refused service after she read the complaint," he does not even attempt to argue that Arrington refused service or provide any other explanation as to why his attempt on Arrington was not successful. *See* [Doc. 86, p. 2]. Moreover, there is no Proof of Service document in the record as to Arrington, so there is nothing more for the Court to review. The Court finds that Plaintiffs have not properly or timely effected service on the remaining Defendants, and they have not shown good cause for their ongoing delay. Accordingly, the Court **DISMISSES** Plaintiffs' claims against the USPS, the DA's Office, and Officer Arrington **without prejudice**.

<u>CONCLUSION</u>

Without sufficient process and service of process over any of the named Defendants, this Court simply lacks jurisdiction over this case. *In re Worldwide Web Sys., Inc.*, 328 F.3d at 1299; *Albert*, 2022 WL 1184405, at *1; *Glover*, 2020 WL 1876253, at *3. Accordingly, the Court **DISMISSES** Plaintiffs' action **without prejudice** for failure to properly and timely serve any named Defendant. *See* Fed. R. Civ. P. 12(b)(4) & (5); Fed.

R. Civ. P. 4(c), (e), & (m). Further, the Court exercises its considerable discretion and declines to exercise it to further extend the time for Plaintiffs to serve Defendants.

**SO ORDERED**, this 6th day of August, 2024.

S/ Tilman E. Self, III

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**